352 So.2d 666 (1977)
STATE of Louisiana
v.
Joseph G. MADERE.
No. 59765.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied December 14, 1977.
*667 Howard P. Elliott, Jr., Gen. Counsel, Dept. of Public Safety, O. E. Jack Roberts, Baton Rouge, for plaintiff-applicant.
Daniel E. Becnel, Jr., The Law Offices of Daniel E. Becnel, Jr., Reserve, for defendant-respondent.
DIXON, Justice.
On September 20, 1974 Louisiana State Police officers seized sixty-two slot machines from a house and garage owned by Joseph G. Madere. At the time of the seizure none of the machines were in use, and many were allegedly in such a state of disrepair that they could not be used. The State, through the Department of Public Safety, thereafter filed an action for declaratory judgment, naming Madere as defendant, to determine whether R.S. 15:31, as amended by Act 130 of 1972, permits the confiscation and destruction of slot machines without a court order.[1]
A separate suit, filed by Madere, seeking an award of damages against the State was later consolidated with the action for declaratory judgment. The trial court held that R.S. 15:31 requires a determination that the machines were being used for gambling within a reasonable time of their seizure before destruction is permissible.[2] The Fourth Circuit Court of Appeal, over one dissent, affirmed the trial court judgment. 344 So.2d 29 (La.App. 4th Cir. 1977). We granted the State's application for certiorari to review that ruling.
R.S. 15:31, as amended by Act 130 of 1972, provides:
"A. All law enforcement officers of municipal police forces, sheriffs' departments and the division of state police are hereby authorized and empowered and it is made mandatory and compulsory on their part to confiscate and immediately destroy all gambling devices or machines used for gambling that come to their attention.
"B. As used in this section the term `gambling device' means:
(1) any slot machine; or (2) any machine, mechanical or electronic device of any sort whatsoever with a cash automatic payout device; or (3) a pinball or other ball machine, mechanical or electronic device equipped with a mechanism to release the number of free games or replays and a mechanism to record the free games or free plays so released.
"C. Whenever any other machine, mechanical or electronic device, including but not limited to roulette wheels and similar devices, designed and manufactured primarily for use in connection with gambling, and (1) which, when operated, may deliver, as the result of the application of an element of chance, any money or property, or (2) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property, is used to conduct gambling, then following the conviction of any person for the crime of gambling by use of any such machine or device, the court wherein the verdict of guilty was returned shall order the immediate destruction of the machine or device by the proper law enforcement agency of the parish wherein the machine or device was used for gambling.
"D. Whenever any machine or other mechanical or electronic device of any kind *668 whatsoever, not designed and manufactured primarily for use in connection with gambling, including specifically but not limited to coin-operated bowling games, shuffle alleys, mechanical baseball games, pinball games, mechanical guns, electronic ray guns, digger type machines, iron claws, and all similar types of coin-operated games, is used to conduct gambling, then following the conviction of any person for the crime of gambling by use of any such machine or device, the court wherein the verdict of guilty was returned shall order the immediate destruction of the machine or device by the proper law enforcement agency of the parish wherein the machine or device was used for gambling.
"E. The ownership of a federal gambling stamp for any machine or device, other than a machine commonly known as an `iron claw' or a `digger' machine, shall be absolute proof of its use for purposes of gambling, and neither the State of Louisiana nor any subdivision, agency, agent or enforcement officer shall be liable civilly or criminally for the destruction of any gambling device or gambling machine for which a federal gambling stamp has been issued."
The Court of Appeal held that the phrase "used for gambling" modifies both "gambling devices" and "machines." The court concluded that the slot machines seized from Madere were not "used for gambling," and were not subject to confiscation and immediate destruction.
In the proper interpretation of R.S. 15:31 it is helpful to review the judicial interpretation of its predecessors. Act 231 of 1928 provided for the summary confiscation and destruction by officers of the State of ". . . all gambling devices known as slot machines that may come to their attention, or that they may find in operation." (Emphasis added). This statute was interpreted to mean that all slot machines, whether in use or not, were subject to confiscation and destruction. Schimpf v. Thomas, 204 La. 541, 15 So.2d 880 (1943); State v. Ricks, 215 La. 602, 41 So.2d 232 (1949). In 1962 the provision was amended to provide for the confiscation and destruction of ". . . all gambling devices or machines used for gambling that may come to their attention and that they may find in operation." Act 361 of 1962. In Gascon v. State, through the Department of Public Safety, 263 So.2d 81 (La.App. 1st Cir. 1972), the First Circuit Court of Appeal, properly attaching significance to the change of the disjunctive "or" to the conjunctive "and," held that confiscation and destruction were not warranted absent a finding that the machines were in use. It is significant to note that, unlike the version in the present case, the statute interpreted in Gascon did not provide a separate definition of "gambling devices."
Within one month of the decision in Gascon, the legislature amended R.S. 15:31 to its present form by Act 130 of 1972. In paragraph A, law enforcement officers are authorized (and compelled) ". . . to confiscate and immediately destroy all gambling devices or machines used for gambling that come to their attention." (Emphasis added). The term "gambling device" is defined in paragraph B; while paragraphs C and D pertain to other types of machines, which, when used to conduct gambling, are subject to confiscation and destruction.
It is apparent that the legislature, by distinguishing "gambling devices" and "machines used for gambling" with the disjunctive "or" and by separately defining "gambling devices" without reference to use, intended to restrict the use requirement described in paragraphs C and D to machines not falling within the definition of "gambling devices" found in paragraph B. Furthermore, the title of the act which, while not part of the statute, may be used to determine legislative intent,[3] indicates that the legislature intended that "gambling *669 devices" as defined therein, are to be treated differently from other machines designed for gambling, and destroyed without regard to whether they were in use. This apparently indicates the intent to achieve the results attained by Act 231 of 1928 as construed by Schimpf v. Thomas, supra. Thus, those devices defined in paragraph B are deemed by the legislature to be contraband and are to be destroyed in all cases, while other machines, described in paragraphs C and D as capable of legitimate use, are to be destroyed only when it is shown that they were being used to conduct gambling.
Therefore, we find that the courts below erred in holding that slot machines were subject to immediate confiscation and destruction only when "used for gambling."
An effort was made by defendant to raise constitutional issues for the first time in this court. The only reference to constitutional issues in the pleadings in the district court is in the last sentence of the last paragraph of his answer, in which he said the seizure of his property violated his property rights and infringed upon his "civil liberty," and that he reserved his right to file a civil suit against the State of Louisiana "at a later date." This suit was later filed, consolidated with this declaratory judgment action, but held in abeyance pending this action.
It would not be appropriate for us to undertake to decide important constitutional issues[4] not raised by pleadings, not briefed and argued below, and not considered below. However, it is not necessary to prolong the instant case, nor to deprive the defendant of an opportunity for adjudication of the constitutional issues. There is pending in the district court his suit for damages for wrongful seizure. While he cannot succeed in that suit under his interpretation of R.S. 15:31, he may, by appropriate pleadings, (Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971)), place at issue the constitutionality of the statute as here interpreted.
Therefore, there is judgment herein in favor of the plaintiff, State of Louisiana, and against the defendant, Joseph G. Madere, declaring that gambling devices, as defined in § B of R.S. 15:31, may be confiscated and immediately destroyed under the provisions of § A of R.S. 15:31; the defendant is cast for all costs. The record in the suit Joseph C. Madere v. State of Louisiana et al., No. 7273 of the Twenty-Ninth Judicial District Court, is remanded to that district court.
NOTES
[1] After the slot machines were seized, the State, in order to protect the seizing officers from civil liability, requested an opinion from the Attorney General. (See Atty. Gen. Op. No. 74-1415). The State also, for the same reason, postponed the destruction of the machines pending a judicial resolution of the issues.
[2] The district court, pursuant to an agreement between counsel, withheld judgment on Madere's civil action pending a final determination on appeal of this action for declaratory judgment. The record, however, was forwarded to the Court of Appeal and then to this court, in spite of the absence of a district court judgment.
[3] Melancon v. Mizell, 216 La. 711, 44 So.2d 826 (1950); Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223 (1949).
[4] The principal constitutional issue suggested is that the State is powerless to seize and destroy private property, not used in any illegal pursuit, without judicial proceedings and without compensation. A related issue was recently treated in State v. 1971 Green GMC Van (La., decided September 19, 1977).